The People of Puerto Rico, Plaintiff and Appellee, v. Francisco Galeno Cabán et al., Defendants and Appellants.

No. 9811. Argued February 11, 1943.—Decided February 16, 1943.

*Gaspar Gerena Bras* for appellants. *R. A. Gómez, Prosecuting Attorney (Fiscal),* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Emiliano Borrero filed a complaint in the Municipal Court of Utuado against Francisco Galeno Cabán and Arcángel Felicié because "on July 13, 1941, and in the ward of Viví Arriba of Utuado . . . maliciously and acting jointly and in mutual agreement and against the will and prohibition of the complainant, they destroyed a construction or work belonging to the complainant, consisting of some posts of native wood and framework for a ceiling, which construction was destined for the kitchen of complainant's house, worth about $12."

The charge was classified as an offense of malicious mischief and after the case was heard in the district court, said court rendered judgment finding the defendant guilty, whereupon he took the present appeal.

The evidence for the prosecution consisted in the testimony of the complainant, of his son Emiliano, and of Luis F. Bula and Monserrate Nieves.

The complainant testified that he sent a carpenter to repair a room in his house, and when the latter was about to

place the roof on, defendant Cabán, together with the other defendant Felicié, went to the house and authorized the latter to destroy, as he in fact did, the construction. He was not an eyewitness, but his son was.

The son testified that he was in the house repairing a part thereof with the carpenter Nieves when Cabán, Felicié, chief of police, and policeman Leiva arrived. Cabán ordered Felicié to destroy the construction and "he pulled a bar and destroyed it and then began to throw the pieces of wood all around. Then we said 'Let us go.' " The house stands on premises of the Municipality, on the old road which leads to Ponce. The land does not belong to Cabán. He does not know why Cabán ordered the destruction. Cabán has a farm there. The boundary wires pass "underneath the house." They had not fallen down. Upon being examined by the judge, he answered that Galeno Cabán acquired his farm from Cuadro who had sold him that part "from the old road downwards," excluding therefrom the lot of the house.

The witness Bula testified only that he had seen the complainant living in the house in question for ten years, and that the complainant had called his attention to "some walls that had been taken away" but that he did not know who had done it.

Nieves, the carpenter, stated that the complainant had sent for him to repair the house where he lived situated on the boundary line of Cabán's farm. That he did the work and when there only remained the roof to be placed on, Cabán, Felicié, the Chief of Police Delgado, and policeman Leiva arrived and asked for Borrero. He answered that his son was there. "Then the chief told me to stop my work. I obeyed and continued to gather my tools. Then Arcángel Felicié began to draw the nails out of the wood with a bar used for that purpose"; that he was ordered to do so by Cabán.

The witnesses for the defense were Gerardo Delgado, Fernando E. Leiva and defendant Cabán. The first, the District Chief of Police of Utuado, admits that he was at the scene of the occurrence with Cabán and Leiva and discovered that on the land which Galeno Cabán alleged to be his, "Mr. Monserrate Nieves was enlarging the back part of the house and that he had removed a fence which stood behind the house, that the soil was broken there and some pieces of wood had been placed, the posts, and some cross-bars; then Mr. Galeno asked him by whose permission they had done that; that he answered that he did not have any permission and told him that Mr. Borrero had ordered him; that Galeno then told him 'You have to take that away from here.' And the carpenter answered: 'If it has to be taken away, I'll do it,' and then he began to remove them. Then Arcángel helped him to remove them . . . " He went there because Cabán asked him but he did not have any judicial order.

The policeman testified more or less to the same effect as the chief. Cabán gave a long story tending to explain the difficulties that he had had with the complainant on account of the small house that the latter had on his land. He denied that he gave any order for the destruction. He stated that "the carpenter was cutting some posts and the soil had been broken on my land," and that the carpenter himself, together with Felicié, pulled the posts out.

After the evidence had been introduced, the trial judge stated the following:

"Stand up Mr. Galeno and the other defendant. After hearing your testimony, I realize the true facts of this case. According to your testimony, the complainant had been pulling down some wires on your farm and then built a small house on your land. That was about three or four years ago. Immediately after he built that house, you should have come here with an injunction or something to oust him, or with an unlawful detainer. You failed to do that. You let him acquire ownership of that small house. As an owner your-

self, you will realize the position of one who has built illegally, but has been allowed to do so. Now, in order to do something about that house, you should have gone to the municipal court or come to the district court. It seems that you thought that you were entitled to go there and destroy the construction that was under way in that house, but to that you are not entitled. You have the right to go to a court and have him ousted if he is there unlawfully. I think that you acted in good faith, but you acted illegally. Under these circumstances, I have no alternative but to render judgment and the court finds the defendants guilty and imposes a fine of ten dollars on each one.''

In his brief the appellant maintains, that from the evidence there does not appear the commission of the offense for which the defendants were sentenced. In his brief, as well as at the hearing, the *Fiscal* asks for the reversal of the judgment. Referring to the statements of the trial judge, he stated:

''. . . We do not understand how the lower court, after admitting and expressly stating in its judgment, that the defendant when acting as he did, and for which reason a charge was brought against him, acted in good faith, a phrase which in our opinion is equivalent to 'lack of malice,' could have sentenced the defendants, the element of malice being an essential requirement when committing the offense.''

The judgment will be reversed. In support of this conclusion, after examining the facts and the evidence and the statements of the trial judge himself, it will be sufficient to copy what we said in *People* v. *Reyes,* 24 P.R.R. 156, when reversing another judgment:

''An examination of the evidence forces us to the conclusion that the offense of malicious mischief, of which defendant-appellants have been convicted, does not exist in the present case.

''Section 511 of the Penal Code provides that every person who maliciously injures or destroys any real or personal property not his own, in cases otherwise than such as are specified in said code, is guilty of a misdemeanor.

''That malice is an essential element of the crime of malicious mischief and must be alleged and shown, has been held by this court

in the cases of *People* v. *Maldonado,* 15 P.R.R. 756; *People* v'. *Lanause,* 15 P.R.R. 590, and more recently in the case of *People* v. *Valdés,* 23 P.R.R. 662.

"The Supreme Court of Wyoming has held that malice necessary to constitute the offense of malicious mischief is something more than the malice which is ordinarily inferred from the wilful doing of an unlawful act without excuse. See *State* v. *Johnson,* 7 Wyo. 512.

"The same court holds that in order to constitute the offense of malicious mischief it must appear that the mischief was the direct object of the act and·was not incidental to some other lawful or unlawful act. *State* v. *Johnson, supra.*"

It should not be understood that we are justifing in any manner whatsoever the action of defendant Cabán. Even though he believed that he was right, he was not authorized to take justice in his own hands, against the will of Borrero in the manner in which he did. Nevertheless, since said act did not constitute the offense of malicious mischief for which he was sentenced, together with the person who obeyed his orders, Felicié, we feel bound to reverse the judgment. Another judgment will be rendered instead acquitting the defendants of said offense of malicious mischief, without prejudice to the institution of any other proceeding which might be authorized by law.